**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE: ENFORCEMENT OF RESTRAINING ORDERS ISSUED BY THE HIGH COURT OF ENGLAND AND WALES, QUEEN'S BENCH DIVISION, UNITED KINGDOM, AND THE CROWN COURT OF ENGLAND WALES, UNITED KINGDOM.

Misc. No. 12-289 (RCL)

**UNITED STATES' EX PARTE MOTION TO SUPPLEMENT THIS COURT'S RESTRAINING ORDER ISSUED PURSUANT TO 28 U.S.C. § 2467(d)(3) AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Applicant United States of America, by and through its undersigned attorneys, respectfully moves to supplement this Court's Restraining Order issued on May 21, 2012, pursuant to 28 U.S.C. § 2467(d)(3), to register and enforce two Restraining Orders issued by the High Court of England and Wales, Queen's Bench Division in connection with the United Kingdom's investigation and prosecution of James Onanefe Ibori. On June 28, 2012, the High Court of England and Wales issued a Variation Order, supplementing one of its prior orders, dated June 3, 2008, to specifically name two additional properties located in the United States that were restrained by the June 3, 2008, U.K. Restraining Order as enforced by this Court's May 21, 2012 Restraining Order. On September 26, 2012, the Assistant Attorney General certified that enforcement of the Variation Order is in the interests of justice. Accordingly, and as set forth herein, the United States respectfully requests that this Court amend its May 21, 2012, Restraining Order to specifically name the additional properties identified in the June 28, 2012, U.K. Variation Order. A proposed order is attached.

## I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467. Venue is proper in this Court pursuant to § 2467(c)(2)(B), which provides, in relevant part, that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property . . . may be found."

## II. APPLICATION

On July 16, 2012, the United States received a supplemental mutual legal assistance request from the United Kingdom seeking enforcement of a Variation Order, attached as Exhibit A, for the purpose of securing the following two properties, hereafter referred to as the "Ritz-Carlton Properties," for possible forfeiture under United Kingdom law:

(i)   Unit 5-C North, 1155 23rd Street, N.W., Washington, DC 20037; and

(ii)  Unit NPH 3A, 1155 23rd Street, N.W., Washington, DC 20037.

The United States, with the appropriate certification of the Assistant Attorney General annexed hereto as Exhibit B, applies to this Court to issue the proposed amended restraining order giving effect to the Variation Order issued by the High Court against the Ritz-Carlton Properties on June 28, 2012. Because Unit NPH 3A was sold on or about September 15, 2012, and the June 3, 2008 U.K. Restraining Order as supplemented by the June 28, 2012 U.K. Variation Order, directs Ibori and his associates not to alienate any of his assets, the United States seeks enforcement of the U.K. orders against any funds traceable to the sale of Unit NPH 3A.

## III. FACTUAL BACKGROUND

### A. Overview

As set forth in the application of the United States to enforce the original British restraining orders, James Onanefe Ibori, who served as the Governor of Nigeria's oil-rich Delta State from 1999 to 2007, fraudulently misappropriated millions of dollars in Delta State funds to various businesses he controlled through his relatives and associates. Governor Ibori abused the powers of his office to award lucrative and inflated state contracts to businesses owned or controlled by his family and associates. Further, he then used a web of shell companies and intermediaries in multiple jurisdictions to open dozens of bank accounts to launder and conceal the proceeds of his corruption in the United Kingdom and elsewhere.[1]

**B. Status of the United Kingdom Investigation**

On February 27, 2012, Governor Ibori pleaded guilty to money laundering and conspiracy to defraud. On April 18, he was sentenced to thirteen years imprisonment. During the course of the United Kingdom's investigation, conducted by the Metropolitan Police and the Crown Prosecution Service (collectively, the "Crown"), British authorities identified millions of dollars in assets acquired by Governor Ibori scattered across the world, including in the United States. The Crown intends to seek post-conviction confiscation of Governor Ibori's assets. In order to preserve the availability of these assets for forfeiture under U.K. law, the Crown sought and obtained the British Restraining Orders, attached as Exhibits C and D, from the High Court against Governor Ibori's assets "whether they are in or outside of England and Wales."

In November 2011, the Crown submitted a mutual legal assistance request to the United States pursuant to a treaty between the United States and the United Kingdom, seeking enforcement of the British Restraining Orders. On May 21, 2012, upon the application of the

[1] A description of the facts underlying the U.K. investigation and request for assistance are set forth in the prior U.S application to enforce the original British restraining orders. The same factual basis, as supplemented herein, underlies the United Kingdom's request to enforce the June 3, 2008, British Restraining Order, as amended by the June 28, 2012, Variation Order.

United States, this Court issued a Restraining Order to enforce the British Restraining Orders, which sought the restraint of "all realisable assets" of Governor Ibori. *See* Docket No. ("DN") 3, Restraining Order Issued Pursuant to 28 U.S.C. § 2467 (d)(3), May 21, 2012 enforcing the U.K. Restraining Order, against Governor Ibori, attached as Exhibit C.[2]

The Crown, working in cooperation with Homeland Security Investigations, an agency of the United States Department of Homeland Security, has since uncovered that Governor Ibori acquired the Ritz-Carlton Properties in addition to that real property already restrained by this Court's May 21, 2012, order. As a result, the Crown sought the subject Variation Order to supplement the June 3, 2008, British Restraining Order to specifically name the Ritz-Carlton Properties.

**C. <u>The Ritz-Carlton Properties</u>**

On March 2, 2001, Governor Ibori acquired Unit 5-C of the Ritz-Carlton Properties for $1.180 million. On the property's "closing checklist," Governor Ibori is identified as the property's "purchaser," and Governor Ibori's London address is listed as the purchaser's address. The unit is titled in the name of Flatwillow, LLC ("Flatwillow"). Flatwillow shares the same address as that listed on Governor Ibori's driver's license in Florida.

On June 27, 2001, Governor Ibori acquired Unit NPH 3A of the Ritz-Carlton properties for $3.25 million. This unit, one of the development's Penthouse units, is also titled in the name of Flatwillow, which uses unit 5-C of the Ritz-Carlton Properties as its contemporary address. Governor Ibori received an email from Hunton & Williams, an Atlanta-based law firm, on

[2] The May 21, 2012, Restraining Order sought the restraint of a bank account associated with Merrill Lynch Pierce Fenner & Smith ("Merrill Lynch") in New York. The attached proposed amended restraining order, in addition to naming the Ritz-Carlton Properties, has been updated to reflect the fact that Merrill Lynch was recently purchased by Bank of America, N.A.

October 8, 2001, confirming that Governor Ibori paid the funds needed to complete both the property "purchases on the units at the Residences at the Ritz-Carlton."

Other evidence ties Governor Ibori to the Ritz-Carlton Properties. Kendridge Designs ("Kendridge"), a Washington, D.C.-based interior decorator, confirmed in September 3, 2001, letter to Governor Ibori that Unit NPH3A belonged to him. In this letter, Kendridge estimated that it would cost $568,150 to decorate Governor Ibori's Penthouse Unit, which Kendridge described as "Ibori Residence Ritz-Carlton Residences Washington, DC."

In an email, dated September 21, 2001, another interior decorator confirmed to Governor Ibori that the Penthouse Unit belonged to him. In that email, this designer explained, "I have put together an estimate of what it will take to outfit your Penthouse beautifully and economically."

Governor Ibori's ownership interest in both of the Ritz-Carlton Properties is further corroborated by a check he wrote to Millennium Partners, the company that developed the Ritz-Carlton Properties, on March 2, 2004, in the amount of $20,520.29. The top of this check contains a handwritten notation, stating "#916/Flatwillow" adjacent to Governor Ibori's name.

On or about September 15, 2012, Governor Ibori, through his company, Flatwillow, sold Unit NPH 3A in violation of the June, 3, 2008 U.K. Restraining Order, the June 28, 2012, U.K. Variation Order, and this Court's May 21, 2012 Restraining Order.

## IV. LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), this Court is authorized to issue orders to preserve property during the pendency of foreign forfeiture proceedings until receipt of an enforceable final foreign forfeiture judgment. *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28 U.S.C. § 2467(d)(3)).[3] In

[3] 28 U.S.C. § 2467(d)(3)(A)(i) (2006 & 2012 Supp.) explicitly authorizes courts to issue a

issuing such an order, a U.S. court may register and enforce a foreign restraining order. 28 U.S.C. § 2467(d)(3)(B).

Section 2467(d)(3)(A) requires that the U.S. restraining order be issued "consistent with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process protections for a restraining order under section 983(j) of title 18," as discussed herein. 28 U.S.C. § 2467(d)(3)(A). Consequently, the district court may deny enforcement of a foreign restraining order if it finds that the order was obtained without due process, was issued by an authority that lacked subject matter jurisdiction, or was obtained by fraud.

Pursuant to 18 U.S.C. § 2467(d)(3), the following criteria are relevant in considering a request for enforcement of a foreign restraining order: (1) whether the United States and the foreign government issuing the order are or will become parties to a formal international agreement providing for mutual forfeiture assistance; (2) whether the acts underlying the violation of foreign law giving rise to forfeiture would give rise to forfeiture under federal law if such acts were committed in the United States; (3) whether the Attorney General has determined it would be in the interest of justice to certify the order for enforcement; (4) whether the foreign order was issued consistent with due process; (5) whether the foreign authority had subject matter jurisdiction to issue the restraint; and (6) whether there is any reason to believe the foreign order was obtained by fraud.[4]

---

restraining order "at any time before or after the initiation of forfeiture proceedings by a foreign nation." *See*, e.g., *In re Enforcement of a Restraining Order by the High Court*, 2012 U.S. Dist. LEXIS 75695, at *3 (D.D.C. Apr. 4, 2012) (Section 2467 "now clearly indicates that once 'foreign criminal or forfeiture proceedings' are pending, no pre-restraint hearing is required. Therefore, a United States restraining order can be issued, as in this case, against assets located within the jurisdiction of the United States based upon the foreign court order.").

[4] In issuing the requested restraining order, this Court need not make explicit findings regarding due process, a foreign authority's subject matter jurisdiction, or the absence of fraud in the foreign proceedings. *See* 28 U.S.C. § 2467. Instead, these factors constitute grounds upon

A prerequisite for the enforcement of a foreign restraining order is certification by the Attorney General that enforcement of the order is in the "interest of justice." 28 U.S.C. § 2467(b)(2). On March 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General for the Criminal Division.

The cross reference under 28 U.S.C. § 2467(d)(3)(A) which requires "procedural due process protections for a restraining order under section 983(j)" does not require that forfeiture proceedings, civil or criminal, be filed in the United States, but rather refers to actions and proceedings initiated in the foreign country. As a result, consistent with analogous procedures in a domestic civil or criminal forfeiture proceeding under § 983(j), U.S. Courts may issue an order fashioning the appropriate relief to preserve property during the pendency of foreign proceedings.

## V. DISCUSSION

For the same reasons set forth in the initial application for enforcement, entry of the proposed amended U.S. restraining order is appropriate to preserve for eventual forfeiture in the United Kingdom the property subject to the U.K. Court's June 3, 2008, Restraining Order as amended by the June 28, 2012, Variation Order. First, the United States and the United Kingdom are parties to a bilateral mutual legal assistance treaty. *See* Treaty with the United Kingdom on Mutual Legal Assistance on Criminal Matters, art. 1, U.S.-U.K., Jan. 6, 1994. Second, the underlying criminal conduct of Governor Ibori would also have violated U.S. criminal laws, specifically, 18 U.S.C. §§ 1956 and 1957, giving rise to forfeiture had those

---

which an affected party affirmatively may challenge enforcement of the foreign order. Nonetheless, as set forth herein, such a challenge would lack merit. Similarly, at the restraint stage, the Court need not make an express finding of dual forfeitability. *See, In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts Held at UBS Financial Services, Inc.*, 2012 U.S. Dist. LEXIS 70878, (D.D.C. May 17, 2012).

offenses been perpetrated here. *See* 18 U.S.C. § 981(a)(1)(A) (civil forfeiture for property involved in, or traceable to, a money laundering transaction); § 982(a)(1) (criminal forfeiture of property involved in or traceable to a money laundering violation). Third, both British Restraining Orders and the Variation Order were certified by the Assistant Attorney General on April 6, 2012, and September 26, 2012, respectively.

Fourth, the British Restraining Orders and June 28, 2012, Variation Order were issued consistent with due process pursuant to the U.K.'s Criminal Justice Act of 1988 ("CJA"). To obtain a restraining order under the CJA, the Crown is required to show that: (i) proceedings against the defendants for a specific offense have been instituted and remain pending, and (ii) reasonable cause exists to believe that the proceedings may result in defendants being convicted of an offense from which they may have benefitted. Here, the owner of the Ritz-Carlton Properties that the Crown seeks to restrain was provided with notice of the restraining orders and apprised of the right under U.K. law to apply to the appropriate court to vary or discharge any of the orders partially or entirely. Specifically, the U.K. Variation Order requires explicit and direct notice to Governor Ibori of his rights under U.K. law to challenge or modify the restraining orders.

Fifth, the restraining orders were issued by courts of competent jurisdiction. Finally, the United States is not aware of any reason to believe that the British orders were obtained by fraud. As such, ample justification exists for the registration and enforcement of the British orders in the United States.

This Court also has the authority to enter the proposed amended restraining order. Section 2467(d)(3)(A) authorizes the district court to enter a restraining order to preserve the availability of property subject to either civil or criminal forfeiture proceedings under foreign

law in a manner consistent with the "procedural due process protections for a restraining order under section 983(j)." The statute makes clear that § 983(j) is not to be given literal application, but rather the cross-reference to § 983(j) refers to "the applicable foreign criminal or forfeiture proceedings" in the context of enforcing a foreign restraining order. 28 U.S.C. § 2467(d)(3)(A)(ii)(II)(aa). Consequently, applying the language of § 2467(d)(3)(A) and structures under § 983(j)(1)(A), this Court possesses the authority to issue an order to amend the May 21, 2012 Restraining Order to enforce the U.K. Variation Order according to its terms. These orders mandate the restraint of all realisable property held by or on behalf of Governor Ibori. Accordingly, the United States seeks to supplement the order to specifically direct the restraint of Unit 5-C North and all assets traceable to the sale of Unit NPH 3A.

**VI. CONCLUSION**

For the reasons set forth above, the United States respectfully requests that this Court amend its May, 21 2012, Restraining Order to enforce the United Kingdom's June 3, 2008 Restraining Order as supplemented by the June 28, 2012, Variation Order, consistent with U.S. treaty obligations. The United States will promptly provide those affected individuals and entities with notice of this proceeding and a copy of the Order, and will request, through the appropriate legal assistance channels, that those individuals and entities located outside of the United States who have an apparent interest in the property be provided with notice and a copy of this Court's Order.

Respectfully submitted,

Date: October 4, 2012

JAIKUMAR RAMASWAMY, Acting Chief
LINDA SAMUEL, Deputy Chief
DANIEL H. CLAMAN, Asst. Dep. Chief

By: ______/s/______________________
Woo S. Lee (D.C. BAR NO. 486004)
Elizabeth Aloi
Trial Attorney
Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, D.C. 20005

Telephone: (202) 514-1263
Fax: (202) 514-5522

Attorneys for Applicant
UNITED STATES OF AMERICA